IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT WESLEY PERRY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES DORGER, BRUCE HARFORD, )<br>PATRICK MURPHY and DOUGLAS LENHART, )<br>)<br>Defendants. ) | No. 04 C 4102<br>Hon. Paul E. Plunkett |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Wesley Perry ("Perry"), currently an inmate at Terre Haute - USP, brings this *pro se* "*Bivens*" action, pursuant to 28 U.S.C 1331(a), alleging that defendants James Dorger, Bruce Harford, Patrick Murphy, and Douglas Lenhart ("Defendants") arrested him without an arrest warrant and searched his home without permission and without a search warrant. Defendants have filed a motion to dismiss to which Perry has responded.[1] For the following reasons, the court grants Defendants' motion to dismiss.

## I. Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). This rule has particular force when considering the

---

[1] In his response, Perry complains that the government has ignored his motions and interrogatories and that this case has been one-sided, that is, the government's way. The record in this action is to the contrary. Perry has been given several generous extensions of time to respond to the Defendants' motion to dismiss, and every order this court has entered has detailed its reasoning as to why it was ruling as it did.

allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

In addition, a court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (*citing United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

## II. Facts

The following facts are drawn from Perry's complaint and more definite statement. On August 12, 2003, about 7:20 p.m., Defendants knocked on Perry's door. When he opened the door, they rushed in with guns drawn and immediately hand-cuffed Perry. Perry asked Defendants if they had an arrest and search warrant. However, they ignored his questions and proceeded to search his home without permission and without a warrant.

## III. Analysis

Defendants argue that Perry's claims as to an illegal arrest and search are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in which the United States Supreme Court held that:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. . . . .

*Heck* has been applied to actions brought under *Bivens*, *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997), and is thus applicable to the instant case.

However, the *Heck* Court qualified its holding, explaining that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a ... trial resulting in the ... conviction." *Heck*, 486 at 487, n. 7.

Because the statute of limitations is two years in Illinois for either a § 1983 action, *Williams v. Lampe*, 399 F.3d 867, 869-70 (7th Cir. 2005), or a *Bivens* action, *Crowder v. True*, 74 F.3d 812, 814 (7th Cir. 1996), and the statute of limitations begins to run for an action alleging an arrest without probable cause when the events happened, *Gonzalez v. Entress*, 133 F.3d 551, 553-4 (7th Cir. 1998), the Seventh Circuit has taken an extremely narrow view of the preclusive effect that *Heck* has when applied to unlawful arrest and search claims. In *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998), the Court of Appeals made clear that "Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward." However, the Seventh Circuit has also recognized that a false arrest that does impugn the validity of a conviction is barred by *Heck*. *Gauger v. Hendle*, 349 F.3d 354, 361 (7th Cir. 2003); *see also Kittler v. City of Chicago*, 2004 WL 1698997 *2-3 (N.D. Ill. 2004). As in the instant case, the only way to determine whether an unlawful arrest and search claim impugns the validity of a conviction is by allowing the claim to proceed to the point where court records can be examined.

Defendants have provided the following background information and court records to support their argument that Perry's claim is barred by *Heck* and therefore should not be allowed to proceed until his conviction and sentence has been negated in some manner.

After his arrest on August 12, 2003, Perry pled not guilty to the bank robbery charges against him. Exhibit A, Criminal Docket No. 19. On February 17, 2004, he changed his plea to guilty in open court. Exhibit B, 2/17/04 Transcript of Proceedings ("Tr.") at 36-38. At this hearing the court determined that Perry was mentally competent to enter a plea, explained to him his rights, and asked the criminal AUSA present to summarize the evidence that the United States would present at trial. In response, the AUSA stated that Perry's co-defendant, Terry Johnson, would testify that Perry participated in three bank robberies. The AUSA would also present tape recordings of telephone conversations by Perry at the Metropolitan Correctional Center ("MCC") in which Perry stated that he had engaged in the robberies. The AUSA added that the United States would present a post-arrest conversation by Perry to the FBI as well as bank and cash store surveillance photos and testimony

by bank tellers and employees. The AUSA then provided a detailed chronology of the three bank robberies and specified the amounts of stolen money. *Id.* at 32-36; *see also* 3-4. After hearing this, and with his own counsel present, Perry admitted that the government chronologies were correct and pled guilty to the three bank robberies. *Id.* at 36-38.

On April 13 and 26, 2004, Perry filed two *pro se* motions to dismiss his counsel and to withdraw his plea. Exhibit A, Criminal Docket, Nos. 36 and 38. In his motion to withdraw his plea, Perry contended that his counsel was ineffective, and that his guilty plea was improper because he did not know at the time of his plea that his arrest had occurred without a warrant. He also claimed that there was no reasonable basis or exigent circumstances justifying his arrest without a warrant. In conclusion, Perry argued that his arrest without a warrant had affected his substantial rights and was prejudicial because he would not have pled guilty in the absence of this alleged error. Exhibit C, Motion to Withdraw Plea at 2-5.

On May 4, 2004, the court granted Perry's motion to dismiss his counsel and appointed a public defender panel attorney to represent him. Exhibit A, Criminal Docket, No. 41. The court also denied Perry's motion to withdraw his plea without prejudice in order to provide him with an opportunity to discuss the matter with his newly-appointed public defender. *Id.*

On July 19, 2004, the court held a sentencing hearing. Exhibit A, Criminal Docket, No. 54. The court sentenced Perry to a prison term of 180 months and other conditions. In addition, the court advised Perry of his right to appeal, which he did on August 31, 2004. Exhibit B, 8/26/04 Tr. at 28-31; Exhibit A, Criminal Docket, No. 64. In an unpublished opinion, *United States v. Perry*, 133 Fed.Appx. 329, 2005 WL 1253875 (7th Cir. 2005), the Court of Appeals held that sentencing Perry as a career offender without presenting the facts underlying his prior convictions to a jury did not violate the Sixth Amendment and that any error by the district court in considering itself bound by the sentencing ranges provided by the federal Sentencing Guidelines was harmless. However, the Court of Appeals remanded for re-sentencing with respect to a condition of supervised release

ordering Perry to submit to urine tests. To date, Perry's conviction and sentence have not been negated in some manner.

On September 1, 2004, Perry filed a *pro se* motion in the district court "for review of sentence." Exhibit A, Criminal Docket, No. 67. Besides presenting several different arguments as to why his sentence should be reduced, Perry argued that his arrest and the search of his home occurred without warrants and therefore violated his constitutional rights. Perry concluded that he never should have been sentenced because of the alleged constitutional error. Exhibit E, Motion for Review of Sentence ¶ 5. The district court has not ruled on the motion, possibly because Perry filed it after he filed his Notice of Appeal, which divested the district court of jurisdiction. *Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 228 (7th Cir. 1991).

With this background in mind, the court will examine whether Perry's claim that his arrest and search of his home were unlawful can stand alone without affecting his conviction or if this claim calls into question his conviction. In *Gauger*, the Court of Appeals engaged in a lengthy discussion of this issue. In this case, the plaintiff sued three detectives in federal court after the Illinois Appellate Court reversed his state conviction for murder. Gauger claimed that he was falsely arrested without probable cause. The district court found that Gauger's false-arrest claim was barred by the two-year statute of limitations applicable to Section 1983 claims filed in Illinois. On appeal, however, the Seventh Circuit reversed, finding that Gauger's false arrest claim was barred by *Heck*, and did not accrue for statute-of-limitations purposes, until after his conviction was reversed. *Gauger*, 349 F.3d at 360-62. The Seventh Circuit explained that a false-arrest claim does not necessarily impugn a conviction's validity. *Id.* at 360-61. However, Gauger had made incriminating statements during the interrogation that followed his arrest, and these statements played an important role in his prosecution. *Id.* at 361-62. Because statements that are the fruit of a false arrest are inadmissible under the Supreme Court's decision in *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963), Gauger's incriminating statements would have been inadmissible if his arrest were deemed illegal. Gauger's false-arrest claim accordingly did impugn his conviction and was therefore

barred by *Heck* prior to the reversal of his conviction. *Gauger*, 349 F.3d at 361-62; *see also Kittler*, 2004 WL 1698997 *2-3.

In the instant case, Perry alleges that his arrest and the search of his home were conducted without warrants, thus violating his Fourth Amendment rights. Just like Gauger, Perry made incriminating statements during his post-arrest interview by the FBI, and these statements played an important role in his prosecution. When Perry changed his plea to guilty, the criminal AUSA specifically pointed out that his post-arrest confession would be presented at trial. At sentencing, the AUSA again emphasized the Perry had confessed during his post-arrest interview.

The tapes of Perry's post-arrest telephone conversations at the MCC also played an important role in his prosecution. As explained by the AUSA at Perry's change of plea and sentencing hearings, these tapes contained conversations in which Perry discussed robberies and described to his sister how he split up approximately $30,000 with his partner. These tapes also corroborated statements by Perry's co-defendant and were consistent with the amount of money actually taken during the robberies. If, as Perry claims, his arrest and the search of his home violated his constitutional rights, then Perry's post-arrest confession and his incriminating telephone conversations would be subject to exclusion as fruit of the poisonous tree. *Wong Sun*, 371 U.S. at 484-86; *Gauger*, 349 F.3d at 361.

It is possible that Perry might have pled guilty or been convicted at trial, even if he had not confessed after his arrest or had not made incriminating telephone calls. However, the Seventh Circuit expressly rejected this type of speculation in *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). In that case, Okoro had been convicted of a drug offense based on heroin found in his home during a search. Okoro claimed that police had stolen jewelry belonging to him during the search and then lied when they testified at this criminal trial that they had found heroin in his home. The district court found that *Heck* did not bar Okoro's claim because it was theoretically possible that the defendants had both found illegal drugs and stolen gems from Okoro. In reversing, the Seventh Circuit explained that if Okoro's allegations were to be believed, then he never should have been

convicted in the first place. Allowing his Fourth Amendment claim to proceed before his conviction or sentence had been negated in some fashion would therefore be contrary to *Heck*. *Okoro*, 324 F.3d at 489-90.

Although Perry's complaint merely alleged a Fourth Amendment violation, his other pleadings in his criminal case, most notably, his motion to withdraw his guilty plea make a direct link between the alleged false arrest and search and his conviction, that is, that he would not have pled guilty if he had been aware earlier that he had been arrested without a warrant.

After considering the record in Perry's criminal proceedings and Defendants' arguments, the court concludes that Perry's claim that his arrest and the search of his house was unlawful would impugn his conviction and is thus barred by *Heck*.

Finally, at the same time that he filed his response to the motion to dismiss, Perry filed a motion to strike court order of denial for stay. He claims that he never filed a motion for stay and that the court must have misconstrued his motion for default and renewal of summary judgment. To the contrary, Perry filed a motion to stay until answer of interrogatories on November 5, 2004, that is, he did not wish to have any decisions made in this action until the government answered his interrogatories. This motion was implicitly denied in the court's December 9, 2004, in which it granted Defendants' motion for a protective order and stayed discovery. Because the motion remained on the docket, the court entered an order denying the motion as moot. The court accordingly denies Perry's motion to strike court order of denial for stay.

## IV. Conclusion

For the foregoing reasons, the court grants Defendants' motion to dismiss and dismisses this action in its entirety with prejudice. The court denies Perry's motion to strike court order of denial for stay.

ENTER:

PAUL E. PLUNKETT
UNITED STATES DISTRICT JUDGE

DATED: SEP 2 6 2005